Mr. Talmadge, I believe, is for the appellant. Thank you, Your Honor. May it please the Court, Phil Talmadge, representing Ted Swartz. Mr. Swartz was the victim of a tax fraud scheme that was perpetrated and promoted by a series of major entities, KPMG, a Big Four accounting firm, Brown & Wood, a very large law firm, Presidio Advisory, an organization made up of KPMG former partners, and Deutsche Bank, a large international bank. This fraud involves something called BLPS, as this tax scheme is called, a bond-linked premium structure, or as the IRS, and I'll note, not the SEC, refers to it, son of boss. That's the description that's given for this. The case was dismissed on 12b-6 without leave to amend the complaint. We believe both of those decisions by the district court in this case were error. I note that in our supplemental authorities that we've provided the court, the IRS has indicated that now 1,800 taxpayers were affected by situations like BLPS. The Treasury lost something in the neighborhood of $3.5 billion from these kinds of tax schemes perpetrated by this entity that was engaged in marketing these tax activities. And this case, I think, illustrates very clearly why 12b-6 dismissals are disfavored. We have the evolving understanding of what took place with respect to this conspiracy. We have the circumstance that indicates a United States Senate investigation, a Department of Justice investigation, indictments, a deferred prosecution agreement signed by KPMG in which it admits the existence of the conspiracy. All of this postdated the decision-making process of the district court in this case, anticipated in the complaint, we believe, and in the amended complaint, but the district court dismissed nonetheless. It's kind of shotgunning here now with all this argument. The fact of the matter is that there was a pleading before this judge, and he was asked to dismiss various claims contained in the pleading. He did so on specific grounds that are stated in the order, and you are challenging that ruling. We are indeed, Your Honor. Keeping in mind that the rule is that in considering a motion to dismiss, the court must accept as true all the allegations and must favor the party opposing the motion. So now I think it would be helpful to me if you would tell me why, with respect to each issue under appeal, why it was wrong for this judge to dismiss. I'm more than happy to, Your Honor. But I would add one further thing, that with respect to dismissals under 12b-6, the district court should freely grant amendments to the complaint. And in this case, we have an original complaint that was 40 pages long, an amended complaint, and the trial court ---- The amended complaint that was dismissed, is that correct? It was the original complaint upon which dismissal took place. And there was denial of leave to amend, so the amended complaint was not considered. So I'm asking you to address the complaint that was before the judge and the reason that he dismissed and why you believe they were erroneous. More than happy to, Your Honor. Why doesn't the, you know, Private Securities Litigation Reform Act trump the RICO claim, assuming you've got a RICO claim? I think we do have a RICO claim, Your Honor, but I think I would point out ---- Put that aside for a minute. You've got to deal with private, you know, the ---- We have a RICO claim, but I'd point out as well that in the amended complaint, there was a claim pleaded in the alternative for a Federal securities violation and State securities violation. We would argue that we're entitled to reversal whether there's a RICO claim or whether there was a denial of leave to amend, because if PSLRA applies, obviously, there is a well-pleaded securities claim present. And that was something that was requested as relief in the amended complaint. The district court refused to amend the complaint here to allow this claim to be asserted. But with respect to ---- Are you speaking of the common law claim for fraud with respect to the solicitation of your clients? No, Your Honor. In fact, I'm talking with respect to the amended complaint. The district court ---- The proposed amended complaint. The proposed amended complaint. The district court denied leave. And in that, there was a claim pleaded for Federal securities violation and State securities violation. The court denied that. My point is, under either scenario, whether there is a PSLR defense present in this case, the securities claim should have been allowed to proceed. The district court did not. We believe PSLRA does not bar a RICO claim here because the gravamen of the problem is not the sale of securities, but rather, it's the tax scheme that was involved. And the issuance of opinion letters by KPMG, a large accounting firm, and by Brown & Wood, a large law firm, that enabled this particular tax scheme to proceed and allowed the taxpayer to believe that the taxpayer would be able to deal with the capital gains that Mr. Swartz in this case and the many other taxpayers who are similarly affected experience with respect to this tax fraud scheme. Which of your claims do you contend you should have been given leave to amend? I think, Your Honor, we should have been given leave to amend the Securities Act claim. Okay. Let's just stop right there. Tell me, if given the opportunity to amend, what additional facts would you allege that would entitle you to relief? Well, Your Honor, the argument is that PSLRA bars a RICO claim because PSLRA means there's a well-pleaded Securities Act violation present. Well, then you think that it was a mistake of law made by the judge. Absolutely. You don't need to assert additional facts. I don't think so under the circumstances. If there's a well-pleaded Securities Claim present, then the Securities Act should proceed. Well, one of the points of appeal is that you should have been given leave to amend. What other claims should you have been given leave to amend? Your Honor, I think there were additional facts that were pleaded with respect to the common law fraud claim. There were additional facts. Stop with the common law fraud. What facts would you allege to supplement, to cure the deficiencies found by the judge in your fraud claim? Well, I think it was very clear in the amended complaint, Your Honor, that there was reliance. That was one of the key elements in the common law fraud claim. You keep discussing the amended complaint. Yes. When was an amended complaint filed or proposed? It was proposed. The motion for leave to amend. It was a proposed amended complaint. Correct. Which was disallowed. Correct. All right. Now, what does that contain, that proposed amended complaint? What facts does it contain that would supplement the fraud claim contained in the original complaint? It contains additional allegations, Your Honor, with respect to the reliance element which was of concern to the district court. Reliance by Mr. Swartz on the representations made by the conspirators, in this case KPMG, the law firm. Oral representations. Oral representations, indeed. Representations that were made with. Contrary to the written representation. And this is one of the problems with this case, because in this case the district court relied on evidence outside the record. The written representations we're talking about, the engagement letters and so forth, were not a matter of the complaint. They were matters raised by these conspirators in the 12b-6 motion that were not of record in terms of the complaint. I believe it's entitled to refer to that letter because it was referenced in the complaint. It doesn't have to be attached. As long as the complaint basically references a document, you can look at it for purposes of 12b-6. We believe that there was more than ample evidence asserted, pleadings asserted in the original complaint. But in the amended complaint, it's even more detailed in terms of all of the specific contacts between the conspirators and Mr. Swartz and the indications to him that all is well, notwithstanding any written representations. All is well. You don't need to worry, Mr. Swartz. Everything is fine in this. Notwithstanding the fact that the IRS is issuing two notices indicating that this is problematic. Don't worry. Everything is fine. So let me ask. So your bottom line here is that, you know, just take for a moment that you don't have a RICO claim or that it's trumped by the PSLRA. Even if it were, we think a securities claim is present. Okay. So your contention is, is that you have you should have been getting a leave to amend to allege at least a State law securities claim, which would not be, you know, you have to remove to Federal court, I guess. I don't know. And a Federal 10b claim. 10b claim.  All right. So just a straight securities violation claim.  And common law fraud under Washington State law. And Washington Consumer Protection Act, because there's an argument that was raised to the district court. The district court was concerned about the existence of a capacity to deceive the public and public impact. And, again, additional facts were asserted in the amended complaint that evidenced the fact that there was a capacity to deceive a significant portion of the public and a significant public impact. I note that the district court here, I think the ---- Let me ask you. I'm curious. You know, this all, you know, deals with securities and sale and purchase and all that. Why didn't you allege a securities act claim right at the get-go? I wasn't trial counsel, Your Honor. I can't speak to why trial counsel chose to do whatever trial counsel did in this case. I'm just curious. I mean, a RICO claim. I really don't know. It seems to me that it should have been something that was pleaded in the alternative, as was true in the amended complaint. They pleaded RICO. And then in the alternative, the securities can be state securities violation. But I think this case moves so fast. I mean, I note there was a complaint filed, and within 60 days, motions to dismiss followed. No discovery on jurisdiction. No discovery on the merits. No answers were filed. Boom. The case is gone. That's how fast this case proceeded. And the events transpiring apart from the lawsuit moved very rapidly, indicating very forcefully what discovery would have revealed, which is that this was a conspiracy. These conspirators were doing what they were doing. The gravamen of their conspiracy was tax fraud. It wasn't something the SEC was investigating. It was something the IRS was investigating. You're all pretty sophisticated characters, you know. These were very sophisticated players. I mean, this is the RICO. Well, that's, you know, and frankly, Your Honor, that's one of the things that people say. By both sides.  I mean, your client was, you know, was done. Well, he was relatively sophisticated. But he pleaded in his complaint that he was unsophisticated in tax matters and he relied on professionals. I note that he ran a travel business, an educational travel business that was successful. It took educators. Let me ask you this, counsel. Suppose he was unsophisticated. I went through your proposed evented complaint. Yes. And I got through everything up to number 50, which talked about common law fraud from September 1, 1999. Now, that one I starred because your client, after that time, had plenty of warning by professionals that what was happening was probably illegal. So I noticed that you selected out that particular September 1, 1999, which, as far as I read the record, would be the only possibility of a common law fraud case. Your Honor, I think the first notice from the IRS was issued on December 31, 1999. There was a second one issued on September 5, 2000. Right. The tax letters that were issued by these law firms, by the law firm at KPMG, were issued on December 27th. Excuse me. They were issued on December 31st, and the notice by the IRS was on December 27th. Of what year? Before. Of 1999? Of 1999. No. And in terms of the fraud and the ability to rely on something, if you think about this for a second, you've got KPMG, which is a big four accounting firm, one of the biggest accounting firms in America, reassuring this individual that everything is fine. And when he talked to his local accounting firm, Moss Adams, Moss Adams raised the concerns, but KPMG intruded. And KPMG said, Don't worry. We'll take over the preparation of your tax return. And they kind of edged Moss Adams out of the picture. So in terms of reliance, he could, I think, legitimately rely on one of the biggest law firms in America, one of the biggest accounting firms in America, who kept reassuring him that everything was well. Your Honor, one other thing that you, I think, alluded to, Judge Paz, and that was with respect to, you know, the sophistication of Mr. Swartz in this case, the district court revealed, I think, some of her concern about this case by saying she wasn't shedding any tears for multimillionaires in terms of her analysis of the Washington Consumer Protection Act portion of the case. Right. See, look, it affects these individuals who seem to be pretty sophisticated people. Yeah. What does that have to do with the public at large, the general public? I think that's an extraordinarily dangerous path down which to travel, because, in fact, with respect to the Washington Consumer Protection Act claim, you have to show a capacity to deceive the public. And she was saying people who happen to be wealthy aren't the public. And then she disclaimed any public impact. I would note that the United States and Senate investigation, the Department of Justice investigation, indictments. Well, I guess you're saying the broad sense, you know, the tax, trying to, you know, to save the payment of taxes affects the public at large. It does. I mean, the FISC is impacted by $3.5 billion. I mean, think what $3.5 billion can do in the Federal budget to good purpose. The point here is, when the district court starts to talk in terms of the wealth of the parties as a factor in determining whether or not they are part of the public, I could conceive of a different district court saying, well, if they're poor folks, obviously they don't. Isn't the question of a significant part of the public? I would argue. How many multimillionaires do we have? We have the latest thing that we've provided to you in the supplemental authorities, Your Honor, 1,800 taxpayers, 1,800 of them, to the tune of 3.5 billion dollars the IRS has collected from on the basis of this fraud. I mean, I think that's a state statute affecting, I think. Right. The state of Washington. It does. How many multimillionaires are affected by this? We don't know. We didn't have a chance to do any kind of discovery on this point, Your Honor. That's the point. It was so premature in the process. The point is, this enterprise. Let me ask you this. If you had a securities fraud, a Federal securities claim, a state securities claim, and a common law fraud claim, what more do you need? Consumer Protection Act claim. What do you get out of that? Attorney fees. I mean, it's the same kind of thing with securities. So you get attorney fees out of security then? You do. But I think it's an important aspect of the case. The point is, the district court dismissed everything, and dismissed everything with prejudice. No opportunity to amend. No opportunity to proceed. Would you like to save some time for rebuttal, just in case? And no opportunity to really present the case legitimacy with appropriate discovery. So we'd ask that the court reverse. Okay. Good morning, Your Honor. Seth Farber on behalf of Appelese Deutsche Bank AG and Deutsche Bank Securities.  That's fine. With the Court's permission, I'd like to reserve about five minutes for her. I think the reason that the district court dismissed these claims with prejudice is because there's no amendment that could cure the fundamental problems that she saw. Let me ask you about that, because I went through the proposed amendment. As I say, I'm speaking only for myself, I found number 50, which relates to the common law action for fraud is probably surviving, and that there should have been permission to amend with respect to that claim. What is your response to that? I mean, all the time, this is up to 1999, before all of these letters of assurance or letters of nonassurance that this was illegal, but up to that time, he did not have this kind of advice. Why wouldn't he at least have a common-law claim? Well, the reason that the district court dismissed the fraud claims was because Mr. Swartz couldn't establish reasonable reliance. And the heart of that is that he didn't have all this advice about you better watch out, because what you're doing is probably illegal. He didn't have that in the fall of 1999. Well, I believe, Your Honor, that what the record shows is in his initial engagement letter with KPMG relating to this. They sort of protected themselves, that there might be some question about this? Well, I mean, it can be characterized as protecting themselves, but they advised him of what the risks were that attached to it. And the additional fact that you have with respect to my clients, Deutsche Bank, is there was also in the record a representation letter, a form of engagement letter that he signed with Deutsche Bank in which he explicitly acknowledged that he was not relying on any representations whatsoever that he received from my clients in engaging in these transactions. And counsel, as a trial judge for many years, I know from experience that a party moving for dismissal under 12b-6 will often try to get the court involved in the case. Some of that I think happened here, don't you? Rather than the sufficiency of the pleading, which is the only issue before the court on a 12b-6 motion, is the pleading sufficient to state a claim? You are not, the judge should not be judging the case on the merits or granting a dismissal based on the merits, on the theory that the plaintiff can never win under these circumstances. That's not the issue. Don't you think that happened in this case? I don't think that happened in this case, Your Honor. I think that there were two documents submitted, which the KPMG letter, which was explicitly referred to in the complaint, and I think it's well established in this circuit and elsewhere that a court may properly consider documents that are referred to in the complaint. I recall one citation there by the court that stated that in light of these letters and this documentation, there is no way you can win. Do you think that that is the court expressing that it would be futile to allow amendment? Yes, Your Honor. I mean, I think that's what a dismissal with prejudice on these grounds, in effect, says. And to go also to the argument that Appellant raised, I believe, for the first time in his reply brief, that these letters, engagement letters, should not properly have been considered by the district court. That was not an argument that was made below. And arguments that are not made below cannot be raised in this Court in the first instance. What Appellant argued to the district court below with respect to those letters was he acknowledged that he had signed them, but he said, well, they were part of the fraud. They were procured by fraud, and therefore, it's not fair for the alleged co-conspirators to get the benefit of them. Did not make the point, did not make the argument that these are not properly before the district court on a motion to dismiss. And as I said, did not even make that point in his opening brief before this Court. So that argument, whatever weight it might have had that had been properly presented, I think has been weighed. And as I said, there is no – I'm sorry, Judge Breyer. We do agree that there was a purchase and sale of securities here that would be subject to a securities fraud claim. There was a sale of securities, Your Honor. There was a sale of securities to the finding. That's basically all you need. I'm sorry. That's basically all you need. Well, no, Your Honor, and I respect that. We need to start with that. Well, I agree that that's the start. And I disagree with my adversary when he said there was a well-pleaded securities fraud count. There are other elements that you have to plead to have a successful securities fraud claim, one of them being reliance. And I think the reason why the district court did not grant leave to amend and to add a securities fraud claim is the securities fraud claims have the same deficiencies with respect to reliance that the common law fraud claim does. In addition, it doesn't Let me ask you, what if we were to determine that he should have been given leave to at least leave to amend on the fraud claim? Isn't that just what you just said? Isn't that suggest that he should have been given leave to amend on his securities claim as well, on reliance, if reliance is what you're really Yes, I think that's right, Your Honor. But It would also require an intent to deceive, that is, an intent to defraud, would it not, the securities fraud claim? Yes. Your Honor, he would have to plead, have to satisfy a number of other pleading requirements, including at Sienter there was a statute of limitations issue which the district court pointed out in denying his proposed, his motion for leave to amend. I should point out that it doesn't necessarily follow from the fact that the Reform Act bars a RICO claim that there is necessarily a viable securities act. That's true. I understand that. So, I mean, I think the problems that the district court saw were such that there was no way that they could have been fixed on amendment. Let me just ask you one little side issue here. You know, so he had invoked Federal court jurisdiction through RICO in the original complaint, and then he added State law claims, asking the district court to assert the Federal, the Federal jurisdictional book. But nonetheless, the district court went on to dismiss the State law claims with prejudice. That's a little bit unusual. Usually, and at this stage of the proceedings, when you're right at the gate, if you knock out the Federal jurisdictional basis, usually you dismiss the State law claims, you know, without prejudice, so the plaintiff can go to State court and allege the State claims in the State court and let the State court deal with these State law claims. For example, in the Consumer Protection Act claim, maybe the State courts would have a different take on it. I think the chronology, Your Honor, was a little different than suggested. The plaintiff filed a single complaint that contained all these causes of action. The Federal question, the jurisdictional book is the Federal question jurisdiction under RICO, and then there were State law claims added as to which the district court had supplemental jurisdiction. We moved to dismiss everything. Everything. Right. The plaintiff, in opposing that, didn't make the suggestion that Your Honor did. I grant that in many cases district judges, if they decide to dismiss a Federal clause of action. The one Federal, the main Federal claim. Yes. That frequently they will simply not reach the State law claims. In this case, Judge Peckman did. No one suggested that she do otherwise. I think that her having done so, I think it was within her discretion to do so, and I don't think there would be any purpose served at this juncture for having spent the time and energy to consider those claims and having extensive briefing, oral argument on them, and now them having been brought up to this Court to have them sent, dismissed without prejudice, and sent to a State court judge. And it's not as if on any of these issues there are, quite frankly, sort of new or novel State law principles. I mean, it's basic questions of reasonable reliance, basic questions under the Washington Consumer Protection Act that have been defined by the Washington Supreme Court in the Hangman Ridge case about what constitutes a public interest impact or capacity to deceive a substantial portion of the public. And, you know, under those circumstances, I think, and with none of the parties suggesting otherwise, I think she was within her discretion in reaching the State law claims. With respect to the point about the plaintiff still being entitled to the protections of the Consumer Protection Act, notwithstanding the fact that he is a wealthy individual, I think fairly read that what the district court's comments, in her opinion, indicated was that this is someone who's not part of a large group of people, that there are not many who fall into this circumstance. And in addition, the distinction that is relevant with respect to wealth isn't that you're somehow entitled to less protection under the law, but that, number one, you have greater access to resources, as indeed in the complaint, Mr. Swartz alleged that he had his own separate tax advisors, this Moss Adams firm. He already had a relationship with another bank, a commerce bank that he refers to. There was a broker at Merrill Lynch who he was dealing with who introduced him to people at KPNG in the first instance. So it means that it is a much narrower sphere that of people who are subject to this. I'm happy to answer questions that the panel has on any matter. Let me go back to my common-law claim. Yes, Your Honor. Now, you argued that because the engagement letter contained disclaimers to the effect that the IRS might disallow the blips losses, can we hold as a matter of law, without reference to any other facts, that Swartz's reliance was unreasonable? Isn't that something that should not be held as a matter of law? Well, I think given the warnings that KPMG gave him of the risks, they said, look, there is a risk that this will be challenged. There is a risk that this tax strategy will not work. What he complains of in his complaint is that the strategy has not worked. I think as a matter of law, having been given those warnings, that you can say any reliance he was going to have otherwise would be unreasonable. But in addition, and I alluded to this earlier. I'm just going to ask, was there anything else beside the disclaimers? Well, yes. I think there's a very important disclaimer with respect to Deutsche Bank. We have this second letter that, again, was in the record below and not objected to, that said, and this is in the supplemental record excerpts that we submitted at 63, said Deutsche Bank makes no guarantee or representation whatsoever as to the expected performance or results of the transaction, including the legal, tax, financial, or accounting consequences thereof, and you have not engaged in the transaction in reliance upon any such guarantee or representation, and that's signed by Mr. Schwartz. Now, I think under this court's decision in the Bank of the West versus Valley National Bank case, which we cite in our brief, having said we're not going to rely on you, on advice we're getting from you in entering into this transaction, they can't then come back and say we were defrauded by things you told us in entering into this transaction. Well, suppose this scenario occurred. Suppose you had all these writings and all these disclaimers and the acknowledgment by the plaintiff, but the plaintiff is told verbally by others, this stuff is just routine stuff. Don't worry about it. This is a safe thing to do and the proper thing to do, and his reliance is obtained through some of that. If he were to allege those kind of facts, would that not be sufficient? No, Your Honor, I don't think it would. I think that's precisely the Bank of the West against Valley National Bank case, and that's... Well, tell me why that is precisely that case. Because that was a case in which there were two commercial parties entered into an arrangement, and one said explicitly in writing, I'm not going to rely on representations that you're making to us in entering into this deal. And in effect, they then filed a complaint which said, well, but they gave us all sorts of assurances, and notwithstanding what's in here, they lied to us, they deceived us, et cetera. And what this Court said in that context is representations can't control conduct. It's always sure. It's possible that people may, notwithstanding the fact they say they're not going to rely, they may rely on things that others tell them. But what representations can control is the legal consequences of that reliance. The point being that you can't have a workable judicial system and a workable commercial system if people can't rely on what's in writing, and if courts, frankly, have to get into the exercise of determining whether or not, notwithstanding the fact that you signed a contract and made a written representation, that something else is in fact true. It's a common practice for people to sign things that they have not read, like escrow documents or other things that a real estate person might push at them. They don't read every provision. Well, and I don't think this Court quite has to go so far as to say there would never be a circumstance where a plaintiff might not raise that argument if there was an instance of, you know, an unsophisticated individual in sort of a mass situation. But when you've got two parties, essentially, you know, two sophisticated parties who are dealing with each other, there's no reason to craft an exception to the rule that essentially is if you sign something, you had better read it, because you're going to be bound by it. I mean, it's not an instance of any law. Kagan. Ginsburg. Your time, I don't even have another counsel, but let me, I hope our presiding judge will indulge me. Nobody's cited any Washington law. You might be talking about Federal law, but how do we know what the Washington law is on the matter of reliance and so forth and disclaimers? Wouldn't that be relevant if you were to dismiss all the State law claims? Well, I – Your Honor, I tell you, I can't recall the particular cases that we cited as I sit here. I'm not aware of any indication that Washington law is any different on the principles that I've articulated. But you've answered the question, Your Honor. Thank you, Your Honors. Good morning, Your Honors. My name is Carly Sager. I'm with Latham & Watkins, and I'm appearing on behalf of Appellees Presidio Advisory Services and Presidio Growth. Mr. Farber brought up the engagement letters to talk about the soundness of Judge Swartz's findings in this complaint without leave to amend. But there are other evidence or other allegations in the complaint that also support her findings. First, in paragraph, I believe it's 50, Mr. Swartz alleges that he was told of the possibility of an audit. In August 3rd, 99, he signs the engagement letter that has those representations or those warnings that this was a transaction that could be audited. August 5th, 2000, Moss Adams sends a letter to Mr. Swartz in paragraph 65 that says that they have questions about the validity or the ability of the blips deductions to be taken and the IRS allowing those deductions. October 4th, 2000, KPMG sends a similar letter saying that there are doubts of whether or not the IRS is going to allow these deductions. That was in paragraph 68 of the complaint. October 10th, 2000, paragraph 65, Moss Adams resigns from its engagement to prepare Mr. Swartz for the possibility that the IRS would disallow. And then after that, some point after that, we don't know because the complaint doesn't say, Mr. Swartz files his tax returns, which include the blips deductions. And now, based on those allegations, Mr. Swartz thinks that he can amend the complaint to, within his Rule 11 obligations, to now allege that these representations didn't exist, that there were reasons why he should have been. I thought it was not that they didn't exist. He can't. The letters are what they are. You have to accept his allegations as true for purposes of this 12v6, but it could be they weren't complete, that they well knew. They knew more than what they revealed to him. They knew more. That's what his allegation, and they didn't come clean. But also undercutting them. These are pretty sophisticated accountants. Right. And Mr. Swartz. You know, this you just look at this tax avoidance. You just look at this investment scheme, and it just reeks. Mr. Swartz is also a sophisticated businessman, even taking as true the allegations that he's unsophisticated in tax matters. What he is saying is that he reasonably relied upon allegations that he could take $18 million of capital tax gain and pay no taxes on that. That's what he's saying that he thought KPMG was saying to him. Well, when you're conferring and getting advice from very sophisticated banks and lawyers and whatnot and tax people, I mean, you know, a lot of people, under the current circumstances, on the facts, maybe it was a reasonable reliance on his part. Well, the oral representations that this was bulletproof, that this was 100 percent valid, maybe, but also contradicting that are these allegations in the complaint that there were the engagement letters that advised him of the risk, that before he filed the tax returns, there were communications that disclosed that risk. Well, as Judge Rafiti said at the outset in his remarks, where on a ruling on a 12b-6, you don't look, you don't get to the merits. He may not have a very strong case at the end of the day, when you get to the end of it, but as Judge Rafiti said, you're looking at the complaint to see if, you know, if it's possible that there is some possible set of facts that he could prove that would entitle him to relief on one of his theories. Right. And just the standard, which, and the Supreme Court tells us that that's a, we're supposed to be very, district court judges are supposed to be pretty, very generous on looking at the allegations in the complaint, and then when you get beyond the 12b-6 stage to summary judgment, then, you know, the district court judges can really take a hard look at what they've got. And Judge Peckman did not go to the merits of this case in her order. She looked at the incited to allegations in the complaint which directly contradict that Mr. Swartz was reasonable in relying on any oral representations by KPMG or Brown and Wood. She cites to the allegations. She uses the engagement letter, the possibility of an audit. She talks about the sophistication. And those are the allegations. It's not anything that has to do with the merits that make the amendment, any amendment unable to cure the defect in the complaint. Thank you. Roberts. Thank you very much. On rebuttal, Your Honor, just a couple of points that I think are worth noting. Counsel has essentially argued the merits. I thought Judge Rafiti's point about whether the pleadings are sufficient under 12b-6 is exactly the thing that the court needs to assess, not the merits and the entitlement of leave to amend. Counsel's argument about reliance is interesting because it omits a whole series of additional facts, such as Mr. Swartz was obligated by KPMG to sign a nondisclosure agreement. He was not entitled to talk about this interesting tax deal that had been cooked up to Moss Adams. And when Moss Adams did finally surface some of the tax concerns that it had, KPMG elbowed them out of the way and said, don't worry about whatever they told you. We'll do your tax return for you. So they elbowed them out of the way to enable them to continue to perpetrate the fraud that they were involved in. The bottom line in this case is this case was prematurely dismissed. It was very early on in the process. There was no answer. There was no discovery. There was no opportunity to really develop the kind of case that would have been developed given the facts that have occurred in this case since the filing of the complaint. This is a case in which the United States Senate investigated this set of circumstances. This is a case in which the Department of Justice and the IRS investigated this case. A whole bunch of people were indicted, including some very significant principals of Presidio. And KPMG entered into a deferred prosecution agreement in which it admitted the existence of this conspiracy. Mr. Swartz was a business person. He had a nice business that took educators on travel situations. He made some money. He was trying to shelter that income. That's something I think we all do in terms of our taxes. We try to pay the least possible. He went to a Big Four accounting firm on the advice of his broker. And the Big Four accounting firm and this big law firm advised him that everything was fine with respect to this deal. The bottom line here is if you compare the complaint that was filed, you compare the amended complaint that was filed, there is more than enough of a difference. The amended complaint was not filed. Pardon? You just said the amended complaint was filed. Oh, excuse me. The amended complaint that was proposed. Was proposed, indeed, Your Honor. Both were more than sufficient to allege all of the necessary facts. If you look at the amended complaint, it's an 80-page document that reads like a code pleading document as opposed to a notice pleading document. If you allege fraud, you've got to be a little more specific. You do. And I think it was in this case, Your Honor, it was more than adequately asserted. But the interesting trap for the appellees in this case is they have argued that RICO doesn't apply. It doesn't apply because PLSRA does. And if PSLRA does apply, then there should have been leave granted to assert the 10B complaint that was proposed in the amended complaint. And it was a four-page allegation found at the supplemental excerpts of record from 108 to 113 that is more than adequate to assert the potential of a federal securities claim here. There was a state fraud claim. There was certainly a consumer protection claim if you excise the interesting argument that the district court judge came up with, asserting that somehow because you have wealth, you're not part of the public, and curtailing the possibility of this. I don't know if she actually said that. I think she said more like what Judge Nelson said, which was, in effect, a large segment of the population. She said, Your Honor, she wasn't shedding any tears for wealthy billionaires. The Consumer Act, to protect the ordinary consumer, as I understand the basis for the law, your client does not seem to qualify as an ordinary consumer. Your Honor, I disagree fundamentally with that. I think he is a consumer of tax advisory services from this sophisticated Big Four accounting firm and one of the biggest law firms in the United States. They wrote opinion letters that told him, what you're doing is just fine. We're packaging this whole proposal. We'll get Deutsche Bank involved. Deutsche Bank, by the way, loaned $53 million at 17.5 percent interest, sight unseen, essentially, to Mr. Swartz. It was a hell of a deal. But the point is, there was an opportunity and should have been an opportunity under the Consumer Protection Act of Washington to proceed, and it was very unusual in my book for the district court to dismiss with prejudice the State law claims it should have been allowed to have the opportunity to be developed by discovery and all. What did he – I can't remember. What did he allege that he actually lost in all of this? He lost a profound amount of money paid in fees, $250,000 in fees, I believe, to KPMG. It was close to a million dollars all total. Yeah. It was a huge amount. The interest that Deutsche Bank charged plus its fees was $800 and some thousand, as I recall, $550,000 fee by Presidio. I mean, there were some really heavy upfront fees charged in this case, and the argument that there's no damage. Has that consequence been determined? Pardon? The ultimate tax liability been determined, your client's tax liability. My client has gone back and paid the amount of tax to which he was obliged to pay, that he was obliged to pay, and has paid the interest on top of that as well. How much did he pay? I believe it was a couple of million dollars plus interest of about a half a million dollars or so. And he was one of the people that actually pointed out this concern to the United States Senate that helped prompt the investigation. Okay. Thank you, counsel. I appreciate your arguments. The matter will be submitted. Thank you very much. Arguments are helpful.
judges: D.W. Nelson, Paez, Rafeedie